UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00175-RSE

**MELISSA H.**                                                                                                   **PLAINTIFF**

VS.

**FRANK BISIGNANO,**
*Commissioner of Social Security*[1]                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant Melissa H.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 15; DN 16). The Commissioner filed a responsive Fact and Law Summary. (DN 18). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11).

### I. Background

Claimant Melissa H. has been trying to secure disability insurance benefits under Title II of the Social Security Act since she first applied on May 1, 2017. Her original claim, alleging disability beginning on March 10, 2013, was denied at the initial and reconsideration levels. (Transcript, hereinafter ("Tr."), Tr. 120). Following an administrative hearing, ALJ David Ettinger

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

affirmed the denial on July 23, 2019. (Tr. 120-133). Claimant administratively appealed ALJ Ettinger's decision, and the Appeals Council remanded the case to an ALJ for further evaluation. (Tr. 141-42). Claimant then appeared for another administrative hearing, after which ALJ Dwight D. Wilkerson issued an unfavorable decision on December 15, 2020. (Tr. 144-160).

Claimant filed a subsequent claim for disability insurance benefits on June 8, 2021, alleging disability beginning May 23, 2017 due to bulging discs, hip injury, severe bronchial asthma, foot and ankle swelling, manic depression, bipolar, social anxiety, panic attacks, deafness in left ear, and stroke. (Tr. 186-89; Tr. 533). The Administration interpreted this claim as an implied request to reopen her prior Title II application. Her claim was again denied at the initial and reconsideration levels. (Tr. 172-190).

At Claimant's request, ALJ Steven Collins ("ALJ Collins") convened an administrative hearing on March 23, 2022. (Tr. 38-70). During the hearing, Claimant testified that she has her GED, is married, and has a sixteen-year-old son (Tr. 46-48). She previously worked as a jailer (Tr. 48), cashier (Tr. 48-50), and gas-station attendant (Tr. 51). She has tried to work a few times in the last two to three years, but her hip and left side go numb, and when she does not have her cane or walker, she falls. (Tr. 52-53). Dr. Paula Johnson prescribed Claimant a cane in 2015 or 2016, and she uses a walker daily in her home. (Tr. 53). Claimant estimates she can sit for about ten to fifteen minutes before needing to stand. (Tr. 54). Sitting longer than that causes pain in her lower back that goes down to her hip and past her knees. (Tr. 54-55). She estimates only being able to walk two to three minutes without an assistive device. (Tr. 55-56). Her pain on an average day is a six to seven on a ten-point scale. (Tr. 58). But on a bad day, her pain could reach an eight or nine. (Tr. 59). Claimant takes Gabapentin and Hydrocodone for her pain. (Tr. 60).

ALJ Collins affirmed Claimant's denial of benefits in a written decision issued on May 27, 2022. (Tr. 194-210). Claimant administratively appealed ALJ Collins' decision, and the Appeals Council vacated his hearing decision and remanded the case on March 7, 2023, for resolution of several issues. (Tr. 219-221).

In congruence with the remand order, ALJ Collins held another administrative hearing in Louisville, Kentucky, on November 1, 2023. (Tr. 78-116). Claimant appeared by telephone with her representative. (Tr. 80). An impartial vocational expert also participated in the hearing. (*Id.*).

Regarding her back pain since the ALJ's last decision, Claimant provided the following testimony. The pain "is constant" and "never ceases." (Tr. 92). At pain management, she has had her sciatica nerve burned and lasered, received pain shots, and taken pain medication. (*Id.*). She has had a walker since 2018, but within the last two years, her usage has increased to about 80%, using it in her home to get up from a seated position or to move room-to-room. (Tr. 92-93). Several falls over the last two years have resulted in increased usage of the walker. (Tr. 94). Her lower back pain radiates to her legs and feet and is worse on the left side of her body. (Tr. 95). Claimant takes four doses of hydrocodone and four doses of Gabapentin per day, but the medication "doesn't even help half the time." (Tr. 95). The pain interferes with her sleep, only allowing her to get about four hours of broken sleep per night. (Tr. 96). Sometimes Claimant's cousin comes over in the morning to help her get out of bed and get her dressed and stays with her until her husband gets home from work. (Tr. 96). Five out of seven days a week are "bad days" where she needs her cousin's help to get up and get dressed. (Tr. 100-101).

She spends much of her time reclining on the couch, dozing off for 15-20-minute intervals. (Tr. 97). Claimant estimates that she could stand and walk for about five minutes without needing to sit down, could sit for about 15-20 minutes before switching positions, and could probably lift

five pounds with her right hand but no weight with her left hand.[2] (Tr. 101-102). Claimant states she does not help with household chores or any cooking. (Tr. 101).

On March 12, 2024, ALJ Collins issued an unfavorable decision. (Tr. 14-30). He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, and found as follows. First, Claimant did not engage in substantial gainful activity from May 23, 2017, her alleged onset date, to December 31, 2022, her date last insured. (Tr. 17). Second, through the date last insured, Claimant had the following severe impairments: degenerative disc disease with radiculopathy, asthma, obesity, anxiety, and depression. (Tr. 17-18). Third, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 18-21). At Step Four, ALJ Collins found Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> Claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid even moderate exposure to temperature extremes, humidity, vibration, pulmonary irritants (to include fumes, odors, dust, gases, and poor ventilation), and should avoid all exposure to dangerous machinery and unprotected heights. The claimant requires a cane for ambulation. The claimant would need the option, in intervals of not sooner than 30 minutes, to stand from a seated position needing 1 to 2 minutes to change positions while staying on task. The claimant can understand, remember, and carry out simple, routine, repetitive tasks (those having minimal variation in job duties day to day); requiring little independent judgment; can interact occasionally as needed with others and sufficiently for task completion; and can adapt to occasional changes in a routine work setting. The claimant can perform these tasks for 2 hour segments over an 8-hour workday.

(Tr. 21-27). Additionally, at Step Four, ALJ Collins found Claimant was unable to perform any of her past relevant work through her date last insured. (Tr. 28-29). Fifth and finally, considering

---

[2] Claimant also offered testimony during the hearing about her chronic migraines and her anxiety, depression, and panic attacks. (Tr. 98-101, 102-103). Since Claimant's sole claim in this appeal relates to her back pain and related symptoms, the Court omits further discussion regarding her additional physical and mental impairments.

Claimant's age, education, work experience, and RFC, ALJ Collins found there were jobs that existed in significant numbers in the national economy that Claimant could have performed through her date last insured. (Tr. 29). ALJ Collins concluded Claimant was not under a disability, as defined in the Social Security Act, at any time from May 23, 2017, the alleged onset date, through December 31, 2022, the date last insured. (Tr. 30).

Claimant administratively appealed ALJ Collins' second decision. (Tr. 458-59). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Collins' decision. (Tr. 1-6). At that point, ALJ Collins' denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant asserts one claim of error – that ALJ Collins failed to explain the basis for the residual functional capacity finding regarding her use of a cane. (DN 15, at PageID # 1724). Though the RFC includes the need for a cane for ambulation, Claimant takes issue with it failing to include the need for a cane for balance, as well as ALJ Collins' failure to explain why the cane was required for one action but not the other. (*Id.*, at PageID # 1727). Claimant cites to an "abundance of evidence" she believes demonstrates her impaired balance and the need for a cane not only to ambulate, but also to balance. (*Id.*, at PageID # 1728). ALJ Collins' failure to provide an accurate and logical bridge between the evidence of Claimant's impaired balance and the requirement of a cane solely for ambulation, Claimant argues, constitutes reversible error. (*Id.*, at PageID # 1727-30).

The Commissioner responds that ALJ Collins carefully considered the evidence of record regarding Claimant's use of a cane and other assistive devices and reasonably concluded that she only required a cane for ambulation. (DN 18, at PageID # 1742). The Commissioner further points out that much of the evidence Claimant relies on to prove she needs a cane for balance was

explicitly considered by ALJ Collins in his decision. (*Id.*, at PageID # 1743). Although conceding that Claimant reported poor balance and falls several times in the record, the Commissioner maintains that Claimant has not identified medical documentation showing she needed a cane for balance, as required by SSR 96-9p. (*Id.*, at PageID # 1744).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

To find a hand-held assistive device, such as a cane or walker, is medically required, Social Security Ruling 96-9p requires "medical documentation establishing the need for a hand-held device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). In determining whether a claimant has demonstrated the use of a cane is "medically required," the ALJ "must always consider the particular facts of a case." *Id.* SSR 96-9p offers examples to guide the ALJ's assessment. For instance:

> An individual who must use a hand-held device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

*Id.*

Claimant does not reference 96-9p and does not identify any "medical documentation establishing the need" for a cane for balance. Instead, Claimant cites to evidence of her impaired balance that she thinks proves the need of a cane not only to ambulate but also to balance. Most of this evidence, however, was cited and discussed by ALJ Collins in his decision. For instance, Claimant identifies MRIs and X-rays showing degenerative changes. (DN 15, at PageID # 1727 (citing Tr. 865-67)). ALJ Collins discussed this testing in reviewing the objective medical evidence in the RFC. (*See* Tr. 23).

The same is true for the medical records Claimant cites, showing antalgic gait even with the use of a cane or walker (Tr. 730, 874, 944, 954, 960, 966, 971, 976, 982, 988, 1136), unsteadiness (*id.*), slow and unsteady gait with use of a walker (Tr. 1136), being unbalanced while performing toe, heel, and tandem walking (*id.*), decreased strength (Tr. 719, 748, 1136), and positive straight leg raising (Tr. 741, 754, 766, 874, 945, 955, 960, 966, 971, 976, 983, 989, 1136, 1562, 1568, 1590, 1595, 1600, 1613, 1618, 1631, 1644, 1649, 1654). ALJ Collins again discussed these objective medical findings in the RFC. (*See* Tr. 23). He considered Dr. Johnson's records showing Claimant's "use of a cane with antalgic gait on one occasion" and "use of a cane with shuffling gait[;]" Dr. Lynch's records showing "positive straight leg raise tests, and antalgic gait[;]" and Ms. McClintock's records showing "pain with straight-leg-raise, pain with range of motion of the lumbar spine, unsteady gait, moderately reduced motor strength in the left leg, and mildly reduced motor strength in the right leg" and "difficulty with heel, toe, and tandem walk; and use of a walker for balance." (*Id.* (citations omitted)).

The only evidence Claimant identifies that ALJ Collins did not explicitly reference is Claimant's "history of multiple falls." The records Claimant cites do reflect Claimant reporting a history of falls to different physicians. (*See* Tr. 721 ("has had 2 falls since last appt."); Tr. 728

("she fall [sic] frequently due to left thigh numbness/weakness"); Tr. 811 ("she's fallen twice in the past several weeks"); Tr. 1034 ("she has fallen due to pain/weakness"); Tr. 1134 ("she had multiple falls due to her legs giving out making it difficult to work.")). But none of these physicians documented the need for Claimant to use a cane for balance based on her reported falls.

Claimant also cites to a record dated June 16, 2023, where she reported to the emergency department after a fall. (Tr. 1415-20). But this record postdates Claimant's date last insured by six months, meaning it must only be considered "to the extent that it illuminates that condition before the expiration of the claimant's insured status." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850-51 (6th Cir. 2020) (citing *McAfee v. Comm'r of Soc. Sec.*, No. 1:16-CV-1417, 2018 WL 1516846, at *4 (W.D. Mich. Mar. 28, 2018)). Like Claimant's other records, this emergency-department record did not establish that a cane is required for balance and, therefore, does not illuminate her condition before the expiration of the insured status.

The closest Claimant gets to meeting the SSR 96-9p requirements is her citation to Dr. Johnson's February 20, 2019 record, where Claimant reported "falling a lot." (Tr. 733). During that visit, Claimant requested Dr. Johnson order a walker for her. (*Id.*). The "Plan" section of this record shows that Dr. Johnson ordered a "walker standard" on the date of Claimant's visit. (*Id.*). As to the first requirement of "medical documentation establishing the need for a hand-held device to aid in walking or standing[,]" the Court gives Plaintiff the benefit of the doubt that by prescribing a walker, Dr. Johnson provided medical documentation for a hand-held device. But Dr. Johnson's ordering of a walker at Claimant's request provided no specifics on the circumstances for which the walker was needed. Because Dr. Johnson did not identify that a walker or other assistive device was needed specifically for balance, this record does not meet SSR 96-9p's second requirement.

It is also worth noting that Claimant does not argue that ALJ Collins should have found a walker necessary for balance but only that he should have considered whether a cane was necessary for balance. That is likely because ALJ Collins considered whether a walker was necessary in his RFC analysis. He stated that "negative neurological signs of the lower extremities are inconsistent with disabling physical limitations and the need for a walker." (Tr. 23).

Even setting aside Claimant's failure to meet the requirements for SSR 96-9p, because of the substantial overlap of the records cited by Claimant and the records cited by the ALJ, the Court rejects Claimant's allegation that ALJ Collins failed to consider Claimant's balance and use of a cane. *See Kevin. T. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00372-CHL, 2025 WL 2588519, at *4 (W.D. Ky. Sept. 5, 2025). ALJ Collins considered and weighed the records Claimant cites, as well as other records that Claimant does not cite, and came to the opposite conclusion than what Claimant would prefer.[3] *Id.* Given the lack of evidence regarding Claimant's need of a cane for balance, the Court finds no error from ALJ Collins' omitting narrative discussion of the same from his decision.[4]

---

[3] In discussing the objective medical evidence, ALJ Collins also cited and discussed evidence that does not support Claimant's allegations that use of a cane is necessary for balance. ALJ Collins noted Dr. Johnson's reporting of normal gait, lower extremity function, strength, muscle tones, and reflexes; Ms. McClintock's finding of "normal reflexes and sensation in all extremities[;]" Dr. Johnson's repeated findings of no neurological abnormalities in the extremities; and Dr. Lynch's observations of "normal gait, ambulation without an assistive device, station, motor strength, and sensation." (Tr. 23).

[4] Claimant relies heavily on a case from the Southern District of Ohio, *Joanne L. v. Commissioner of Social Security*, 2:22-CV-2051, 2022 WL 16757031, at *6-8 (S.D. Ohio Nov. 8, 2022). As the Commissioner notes, however, *Joanne L.* does not discuss the "medically documented" requirement of SSR 96-9p. And the "medically documented" inquiry is decided on "the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

## V. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:   Counsel of Record